### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

CATHY WALLIES, on behalf of
A.R.A.W., a minor child                                          PLAINTIFF

V.                          No. 4:25-CV-00491-ERE

SOCIAL SECURITY ADMINISTRATION,
Commissioner                                                    DEFENDANT

### ORDER[1]

Plaintiff Cathy Wallies, mother of A.R.A.W., appeals the Social Security Administration Commissioner's final decision finding that A.R.A.W. was no longer disabled as of November 2018. For the reasons set out below, the Commissioner's decision is AFFIRMED.

## I.     Background

On August 27, 2015, A.R.A.W., who was born on November 6, 2012, was found to be disabled. *Tr. 16, 18*. The August 27, 2015 decision is also referred to as the "comparison point decision" ("CPD") and impairments that existed then are known as the CPD impairments. *Id*. On November 30, 2018, the Administration determined that A.R.A.W. was no longer disabled as of November 2018. *Tr. at 216, 253-254*. A timely request for a hearing before an Administrative Law Judge ("ALJ")

---

[1]The parties consented in writing to the jurisdiction of a United States Magistrate Judge. *Doc. 5*.

1

was filed on A.R.A.W.'s behalf, and a hearing was held on June 2, 2023. *Id*. On June 28, 2023, the ALJ affirmed that A.R.A.W.'s disability ended in November 2018 and found that he had not been disabled since that date. *Tr. at 216-235*. On November 28, 2023, the Appeals Council remanded the claim, instructing the ALJ to evaluate medical evidence submitted after the hearing. *Tr. at 244-247*.

On May 16, 2024, an ALJ held a second hearing. *Tr. 13*. On August 12, 2024, the ALJ issued a decision, finding that A.R.A.W.'s disability ended on November 30, 2018, and that he had not become disabled since that date. *Tr. 13-43*. The Appeals Council denied Ms. Wallies' request for review, making the ALJ's August 12, 2024 decision the Commissioner's final decision. *Tr. 1-6.*

## II. The ALJ's Decision

There is a three-step standard for evaluating whether medical improvement has occurred. *Tr. 14-16*; 20 C.F.R. §§ 416.994a(b). At step one, the ALJ determines if the CPD impairments have improved. *Id.* At step two, the ALJ decides whether the CPD impairments have met or medically equaled a listing since the date disability ended. *Id*. If the impairments functionally equaled a Listing at the CPD, the ALJ determines if those same impairments have functionally equaled a Listing since the date disability ended. *Id*. At Step Three, the ALJ resolves whether the claimant is currently disabled based on the impairments present at the time of the current decision. *Id*. The ALJ must decide if the claimant's impairments are severe,

2

and if they are, whether they meet or medically equal a Listing. *Id*. If not, the ALJ must decide whether the impairments functionally equal a Listing. *Id*.

When assessing whether severe impairments functionally equal a Listing in a child disability case, the ALJ must consider the claimant's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id*. To functionally equal a Listing, the impairment must result in marked limitations in two domains or extreme limitations in one domain. *Tr. at 15*; 20 C.F.R. § 416.926a(b)(1).

The ALJ found that, at the time of the CPD, A.R.A.W. had the following medically determinable impairments: speech and language delays and disorder of the nervous system. *Tr. 17*. These impairments were found to functionally equal a Listing. 20 C.F.R. §§ 416.924(d) and 416.926(a). *Id*. However, the ALJ found that medical improvement occurred as of November 30, 2018,[2] and that the CPD impairments have not functionally equaled a Listing since then. *Tr. 17-18*.

The ALJ discussed the six domains and assessed the limitation levels based on A.R.A.W.'s CPD impairments.

> **1.  Acquiring and Using Information**—The ALJ noted that, as of the time of the decision, A.R.A.W. had advanced to middle school and was taking

---

[2] This is the last day of the month that disability ended.

regular classes without an IEP.[3] *Tr. 19, 21, 30, 1914, 1248, 1472*. A.R.A.W. was not receiving any therapy services at school, although he received outpatient therapy. *Id*. He was sleeping and eating well. *Tr. 21, 34-35, 1346-1347*. A consultative examiner administered an IQ test in November 2018 and found that A.R.A.W. had near average intelligence with academic skills in the low-average range. *Tr. 19, 35, 37, 822-825*. The examiner noted no significant deficits in adaptive functioning. *Id*. The examiner also observed that A.R.A.W. was attentive, talkative, cooperative, and displayed adequate concentration, persistence, and pace. *Tr. 21, 38, 823-824*. Normal clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

In 2022, a teacher reported that A.R.A.W. was making B's and C's and had no behavioral issues. *Tr. 19, 736-739*. A.R.A.W.'s middle school principal reported that he had only two anger outbursts in the 2023-2024 school year. *Tr. 19, 787*. The state-agency consultants found that A.R.A.W. had no limitation in acquiring or using information, based on the CPD impairments. *Tr. 19-20, 165-167, 884-889*.

**2.   Attending   and   Completing   Tasks**—In   2019, A.R.A.W.'s kindergarten teacher reported that he was a hard worker and independent, although he needed some extra help at times. *Tr. 19-21, 34-39, 676*. A.R.A.W.'s therapist regularly found that his concentration and attention were intact during examinations.

---

[3] An IEP is an Individualized Education Plan.

*Id., Tr. 1159, 1184-1201, 1212-1224*. Medications were effective, and side effects were manageable. *Id.*; *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000) (Impairments that are controllable or amenable to treatment do not support a finding of total disability.). The state-agency consultants found no limitation in attending and completing tasks, based on the CPD impairments. *Tr. 21, 164-167, 884-889.*

**3. Interacting and Relating with Others**—A 2018 consultative examiner found that A.R.A.W., who was cooperative and friendly during the evaluation, could interact socially and effectively communicate. *Tr. 22, 822-825*. A 2018 speech evaluation revealed that A.R.A.W. had moderately delayed language skills and mildly delayed articulation skills. *Tr. 819*. He was cooperative and easily established rapport with the evaluator. *Tr. 815*.

The records show that in 2021, A.R.A.W. was hospitalized after he was aggressive with family members and tried to run away. *Tr. 1050-1051*. Upon discharge after an eight-day inpatient stay, A.R.A.W. was medically stable and had "no functional limitations that prevented him from interacting in a social environment and participating in his aftercare plan." *Id*. In 2023, A.R.A.W. was being bullied at school, but he was receptive to intervention, including practicing deep breathing. *Tr. 22-23. 1872-1875*. He also tried to stay out of disputes with his siblings. *Tr. 22-23, 1276*. At a February 2023 therapy appointment, A.R.A.W. engaged in rapport building activities and ended the session in good spirits. *Tr. 1283*.

The state agency consultants assessed less than marked limitations in this domain related to the CPD impairments. *Tr. 22-23, 1647-167, 884-889.*

**4. Moving About and Manipulating Objects**—The ALJ noted A.R.A.W. could do chores, help his mom in the kitchen, play outside, play video games, ride a bike, and climb trees. *Tr. 24, 32, 62, 71, 139.* The state agency consultants assessed no limitation in this domain from the CPD impairments. *Tr. 24, 165-167, 884-889.*

**5. Caring for Yourself**—In 2018, A.R.A.W's teacher reported that he worked appropriately in small and large groups, demonstrated self-control, respected others, and resolved conflicts appropriately. *Tr. 25, 832.* He said he loved to play Minecraft and use his imagination. *Id.* Throughout the relevant period, A.R.A.W. was eating and sleeping well. *Tr. 25, 832, 1346, 1370.* In 2022, his therapist noted that he generally had a good mood. *Id.* The state agency consultants found no limitation in this area based on the CPD impairments. *Tr. 24-26, 165-167, 884-889.*

**6. Health and Physical Well-Being**—Again, A.R.A.W.'s sleep and appetite generally were not an issue. He could also perform physical activities of daily living. In November 2021, physical and mental status examinations were normal; his grades were good; he kept to himself at home to avoid conflict with siblings; and he was tolerating his medications. *Tr. 1158-1161.* In August 2022, A.R.A.W. presented as happy and excited, and was receptive to strategies to avoid

being bullied. *Tr. 1340, 1341*. The state agency consultants found no limitation in this domain, based on the CPD impairments. *Tr. 26-28, 165-167, 884-889*.

The ALJ agreed with the state agency consultants' findings and continued the analysis by finding that since November 30, 2018, A.R.A.W. has had the following severe impairments: attention deficit hyperactivity disorder ("ADHD"), impulse control disorder, depression, language disorder, and speech sound disorder. *Tr. 28*.

Next, the ALJ found that since November 30, 2018, A.R.A.W. has not had an impairment or combination of impairments that meets, medically equals, or functionally equals a Listing. *Tr. 29*.

At this step of the analysis, the ALJ again discussed the medical and school evidence noted above, such as: (1) positive redirection during any conflict at school; (2) the ability to perform typical daily activities; (3) normal physical examinations; (4) success in managing symptoms with treatment; (5) teachers' reports of good behavior; (6) reports from A.R.A.W.'s mother that he was able to communicate and resolve issues and stressors at home; and (7) eating, sleeping, and exercising without issue. *Tr. 29-37*. Considering the record evidence of impairments present since November 30, 2018, the ALJ found no limitations in the domains of acquiring and using information, moving about and manipulating objects, caring for yourself, and health and physical well-being. He found less than marked limitations in the domains of attending/completing tasks and interacting/relating with others. *Tr. 37-43*.

Based on these findings, the ALJ found that A.R.A.W.'s disability ended on November 30, 2018, and he has not become disabled again since that date. *Tr. 43*.

## III.  Discussion

### A.  Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence in the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence: in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

### B.  Ms. Wallies' Arguments for Reversal

Ms. Wallies asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ: (1) failed to properly evaluate the opinion

8

evidence; and (2) failed to properly evaluate A.R.A.W.'s subjective complaints. After carefully reviewing the record as a whole, I affirm the Commissioner.

## C.    Analysis

### 1.    Opinion evidence

Without expressly mentioning any of the opinion evidence, Ms. Wallies vaguely argues that the ALJ did not properly evaluate the opinions.

Actually, the ALJ discussed the opinions from medical experts and A.R.A.W.'s teachers, and fully explained the weight given to each.[4] I will address a few examples.

In August 2015, Keith Norwood, M.S., and Tom Wright, Ed.D., conducted objective testing, where A.R.A.W. was responsive and made eye contact. *Tr. 807-812*. The examiners noted that A.R.A.W. was receiving speech, physical, and occupational therapy at that time and found that he had some delays in developmental milestones, with evidence of impairment. *Id*. The ALJ gave this opinion little weight because it occurred before the CPD and, since that testing "the medical record shows that [A.R.A.W.'s] conditions have improved . . . ." *Tr. 36*.

---

[4] For claims filed before January 28, 2017, it is the ALJ's function to review all the medical evidence and resolve conflicts among the various treating and examining physicians, and to explain the weight given to provider opinions. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007); *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). After that date, new regulations focused on the supportability and consistency of the opinion with the balance of the record. *See* 20 C.F.R. § 404.1520c(a)-(c) (2017). "It is well established that an ALJ may grant less weight to a treating physician's opinion, however, when that opinion conflicts with other substantial medical evidence contained within the record." *Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000).

On November 12, 2018, Dr. John Faucette Ph.D. examined A.R.A.W. and performed an IQ test. *Tr. 820-825*. Dr. Faucette assessed A.R.A.W. as performing in the low-to-average range academically. *Id*. He found that A.R.A.W. could communicate in an effective and intelligible manner, and that he had the cognitive capacity to perform basic age-appropriate academic skills. *Id*. He added that A.R.A.W. could attend to and sustain concentration and persistence in completing the tasks of the evaluation. *Id*. A.R.A.W. also performed the tasks in an acceptable time frame. *Id*. The ALJ gave substantial weight to this opinion, finding that it was supported by testing and assessments from A.R.A.W.'s teachers. *Tr. 35*.

In 2018, a speech language specialist conducted a speech language evaluation, which revealed appropriate vocal quality and fluency, but mild-to-moderate delay in receptive and expressive language and articulation. *Tr. 814-819*. The ALJ gave this evidence some weight but noted that current records showed no need for specialized speech services and that school staff said A.R.A.W. could communicate with peers and adults. *Tr. 36*.

The ALJ evaluated a 2019 report from A.R.A.W.'s kindergarten teacher, which noted minimal problems in the six domains. *Tr. 668-674*. She said he was a great listener, worked hard in school, and was kind and respectful. *Id*. The ALJ gave some weight to this opinion based on the teacher's familiarity with A.R.A.W. and its consistency with the balance of the evidence. *Tr. 35*.

10

State agency consultants also reviewed the records and provided opinions. *Tr. 165-167, 884-889*. In 2018, one consultant found no limitation in the five functional domains, and less than marked limitation in only the ability to interact with others. *Tr. 165-167*. In 2019, another consultant drew the same conclusion, except that A.R.A.W. also had a less than marked limitation in the caring-for-yourself domain. *Tr. 884-889*. The ALJ gave some weight to these assessments. *Tr. 35-36*.

Finally, in 2020, A.R.A.W. underwent a psychological evaluation and speech language assessment. *Tr. 1906-1941*. The evaluation found that A.R.A.W. was fidgety but was cooperative and communicative and did not fall within the autism spectrum disorders. *Tr. 1914- 1915*. There were some deficits in certain development areas, but the providers simply advised that Ms. Wallies continue to communicate with A.R.A.W.'s school and continue outpatient therapy. *Tr. 1938-1940*. The ALJ gave this opinion some weight because it was supported by objective testing but noted that this was based on a one-time session with A.R.A.W. rather than regular assessments. *Tr. 36*. The ALJ also pointed out that A.R.A.W.'s mother said he could play video games, ride bikes, climb trees, play with friends, and care for himself. *Id*.

The ALJ properly discussed and evaluated the medical and teacher opinions, and his findings about these opinions were supported by the evidence of record.

11

## 2.   Subjective complaints

The ALJ found that the statements concerning the intensity, persistence, and limiting effects of A.R.A.W.'s symptoms were not entirely consistent with the record as a whole. *Tr. 34*. Ms. Wallies argues that this assessment fell short, pointing to A.R.A.W.'s inpatient stay, and his occasional outbursts and aggressive language at school. She generally asserts that this evidence supports a finding of disability.

An ALJ will consider various factors in addition to the objective medical evidence, including: a claimant's daily activities; the duration, frequency, and intensity of symptoms; the dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. *See* Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 1996 SSR LEXIS 4 (S.S.A. March 24, 2016); see also *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). A claimant's subjective allegations may be discounted if the evidence as a whole is inconsistent with said allegations. *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). In short, an ALJ may discredit some or all of the subjective statements in the record, based on a review of the above *Polaski* factors.

Ms. Wallies cherry-picks the evidence of behavioral issues and makes no claims about intellectual or physical functioning. As for the hospital stay, A.R.A.W. had improved upon discharge and the provider found no functional deficits at that time. Based on the records, A.R.A.W. showed improvement over the relevant

period; had success in therapy; could perform daily activities; and performed well in consultative examinations. Ms. Wallies explained that A.R.A.W. was better at handling conflict at home and often stayed in his room reading to avoid disruption. A.R.A.W.'s conflict resolution skills improved greatly as he advanced in school. His teachers reported that he was a good listener and remained on task.

The ALJ noted the waxing and waning nature of A.R.A.W.'s symptoms and addressed the fact that bullying at school could be a precipitating factor for instability but also noted A.R.A.W. learned healthy ways to address bullying with teachers or staff. *Tr. 19-43*. The ALJ discussed A.R.A.W.'s medications, his positive response to the medications, the known side effects (which were minimal to none), and the adjustments to medications. *Id*. As noted above, the ALJ discussed A.R.A.W.'s daily activities based on reports from his mother and teachers and his ability to perform activities that were inconsistent with allegations of total disability. *Id*. In addition, no doctor placed any functional restrictions on A.R.A.W. *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003) (A lack of physician-imposed restrictions may serve as a reason to discredit a claimant's claim of disability.).

An ALJ must look at the record as a whole and subjective allegations alone cannot support a finding of disability. *Reter v. Railroad Retirement Board*, 465 F.3d 896, 899 (8th Cir. 2006). The ALJ properly found that statements in the record about

13

A.R.A.W.'s symptom severity were not entirely consistent with the record as a whole. *Tr. 34*.

## IV.   Conclusion

The ALJ applied proper legal standards in evaluating Ms. Wallies' claims, and substantial evidence supports the decision to deny benefits.

IT IS THEREFORE ORDERED that Commissioner's decision is affirmed and judgment will be entered in favor of the Commissioner.

Dated 24 March 2026.

_____
UNITED STATES MAGISTRATE JUDGE

14